* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. The carrier liable on the risk is Key Risk Management Services.
4. On all relevant dates, plaintiff's average weekly wage was $675.00, which yields a compensation rate of $450.02.
5. At the Deputy Commissioner's hearing, the following exhibits were admitted into evidence:
 a. A packet of Industrial Commission forms and filings marked as Stipulated Exhibit (2);
 b. A packet of medical records marked as Stipulated Exhibit (3); and
 c. A packet of discovery responses marked as Stipulated Exhibit (4).
6. The issues to be determined are as follows:
 a. Whether plaintiff sustained a specific traumatic incident to his neck while in the course and scope of his employment on or about May 12, 2004 and, if so, to what compensation, if any, is he entitled;
 b. Whether plaintiff contracted an occupational disease to his left hand and arm as the result of repetitive use while in the course and scope of his employment on or about May 12, 2004 and, if so, to what compensation, if any, is he entitled; *Page 3 
 c. Whether plaintiff is barred from receiving indemnity compensation for unjustifiably refusing suitable employment, and;
 d. Whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1
and Rule 802.
 * * * * * * * * * * *
Based upon the foregoing stipulations and competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 38 years old. Plaintiff is a high school graduate and attended the University of North Carolina at Wilmington for a period of time. As of the Deputy Commissioner's hearing, plaintiff had returned to college, majoring in education and psychology.
2. Plaintiff began employment with defendant-employer in June 1996 on a part time basis as a sautÉ cook. In May 1999, plaintiff became a full time employee and was promoted to kitchen manager/supervisor. In that capacity, plaintiff was responsible for all kitchen activities, as well as helping at different stations as needed and continuing as an active cook. Plaintiff worked as a sautÉ cook the majority of his ten-hour shift even after his promotion. Plaintiff further testified that he worked 50 hours per week as a salaried employee and was eligible for monthly bonuses based upon the restaurant's profitability.
3. While working as a sautÉ cook, plaintiff was required to reach overhead frequently for sautÉ pans, as it was defendant-employer's policy never to use a pan more than twice. On a busy night, plaintiff used as many as 200 pans, each weighing between one and five pounds. Plaintiff is right hand dominant and used his left hand to lift the sautÉ pans, while using *Page 4 
his right hand to stir, remove or add ingredients. Additionally, at the end of each shift, plaintiff cleaned the sautÉ grate, which weighed approximately 40 pounds.
4. Prior to the date in question, while at work for defendant-employer, plaintiff experienced periodic pain in his left wrist with certain activities, with the onset of his pain typically being at the end of a shift. When the pain was significant, plaintiff wore a wrist splint. Plaintiff's general manager, Wendell Horrell, testified that prior to May 12, 2004, plaintiff frequently complained about pain in his left forearm causing numbness in his wrist and pain shooting up the back of his arm. Steve Darnell, plaintiff's supervisor and defendant-employer's executive chef, also testified that plaintiff reported experiencing pain running up the back of his arm into his neck.
5. On May 12, 2004, plaintiff was cleaning towards the end of his shift. As part of his cleaning, plaintiff had to lift the sautÉ grate and carry it to the mop room to be cleaned. According to plaintiff, as he lifted and turned the grate to dump it, he experienced a shocking type sensation in his left arm which then became numb. Plaintiff further experienced a sudden onset of pain down his left arm, primarily in his wrist. Plaintiff informed a co-worker that he might have injured himself and required medical attention.
6. On the following morning, plaintiff sought medical attention at a MEDAC facility. At that time, plaintiff reported numbness in his left elbow, down into his wrist. Plaintiff was diagnosed as having a wrist sprain and was prescribed medication and a velcro wrist splint. Plaintiff informed Mr. Darnell of his treatment at MEDAC. Thereafter, plaintiff continued working for defendant-employer for a period of time, eventually returning to MEDAC having experienced no improvement. Plaintiff was then referred to Wilmington Orthopaedics. This appointment was changed to Atlantic Orthopaedics at the request of defendants. *Page 5 
7. Plaintiff was initially examined by Dr. Kevin Scully with Atlantic Orthopaedics on May 25, 2004. Plaintiff reported to Dr. Scully having experienced discomfort in his left wrist for several months prior to May 2004. Medical records reflect that plaintiff informed Dr. Scully that he was unsure of exactly what had occurred, but that he experienced the immediate onset of a shooting type pain in his wrist on May 12, 2004. Following an examination, Dr. Scully diagnosed plaintiff with compressive neuropathy. Dr. Scully assigned work restrictions of no sautÉ ing or grilling with his left arm and no lifting over 25 pounds, but advised plaintiff that he could expedite orders. Plaintiff attempted to return to work with these restrictions, but was unable to continue working due to his pain.
8. On June 9, 2004, plaintiff underwent an MRI of the left wrist which revealed a small bone element in the lunate and minimal edema within the lunate which was suggestive of a minor prior trauma. Dr. Scully's findings also were suggestive of a potential neck pathology. Dr. Scully then medically excused plaintiff from work for the period of June 10, 2004 through June 18, 2004 and referred plaintiff to Dr. Richard Bahner, Atlantic Orthopedics' hand and upper extremity expert.
9. Plaintiff was initially examined by Dr. Bahner on June 24, 2004, at which time he was diagnosed as having a wrist sprain for which a wrist brace was recommended. Plaintiff also reported that he had been experiencing this type of pain periodically for three years. On July 1, 2004, Dr. Bahner medically excused plaintiff from work through August 5, 2004, when he was again released to return to work with restrictions. Dr. Bahner also recommended an EMG nerve conduction study, the results of which revealed an ulnar neuropathy at the elbow and no evidence of cervical radiculopathy. On September 7, 2004, following an ulnar nerve transposition procedure, plaintiff reported that his left shoulder area had completely resolved. Plaintiff did, *Page 6 
however, continue to report experiencing pain on the ulnar side of his left wrist and in his left arm.
10. As of May 17, 2005 Dr. Bahner released plaintiff to return to work with no restrictions. Because of plaintiff's ongoing complaints, Dr. Bahner referred him for an evaluation with an occupational therapist. The therapist reported to Dr. Bahner that plaintiff had no swelling or discoloration, but demonstrated a lot of facial grimacing with attempted use. Dr. Bahner testified that this supported his opinion that plaintiff's reports of symptoms might be out of proportion to the objective medical evidence.
11. At his deposition Dr. Bahner was unable to state with medical certainty that plaintiff's job duties caused the ulnar neuropathy, but did give an opinion that the labor and repetitive action of plaintiff's job could aggravate an existing ulnar neuritis or neuropathy.
12. Upon the referral of his personal physician, on June 7, 2005 plaintiff was examined by Dr. William Sutton, an orthopedist. Plaintiff reported experiencing left arm and shoulder pain. X-rays revealed mild degeneration around the C5-C6 and C6-C7 areas and some narrowing of the foramen around the C5-C6 area. Dr. Sutton diagnosed plaintiff with cervical radicular pain with suspected weakness in the C5 area.
13. On July 21, 2005, upon the request of Dr. Sutton, plaintiff was examined by Dr. Adam Brown, a neurosurgeon. Dr. Brown reviewed plaintiff's MRI and found what appeared to be bilateral radiculopathies or compression of nerves at both C4-C5 and C5-C6 for which he recommended surgery. On July 27, 2005, Dr. Brown performed a two level anterior cervical diskectomy and fusion at those levels. Following this procedure, plaintiff experienced immediate relief in his arm. Dr. Brown stated that he would have recommended plaintiff remain out of work for eight weeks. Six months after plaintiff's surgery, Dr. Brown found that his *Page 7 
condition had improved but that he was still complaining about the area around his left ulnar nerve. Dr. Brown explained that the ulnar nerve problem was separate from his C4-C5 and C5-C6 problem and referred plaintiff to Dr. Richard Moore, an orthopedist.
14. Dr. Brown testified that plaintiff reached maximum medical improvement with respect to his cervical fusion as of February 28, 2006 and assigned a 13% permanent partial disability rating to the neck. Dr. Brown further stated that plaintiff could probably return to his job as a cook.
15. On the issue of causation, Dr. Brown initially testified in his deposition that if plaintiff never experienced neck problems prior to May 12, 2004, then he was comfortable stating to a medical degree of probability that lifting of the grate as described by plaintiff caused the neck condition for which surgery was performed. Dr. Brown further testified that the lifting incident could have aggravated a pre-existing cervical condition. However, upon further questioning, Dr. Brown stated that he did not have any documented cause for plaintiff's cervical condition and that, ultimately, any causation opinion he rendered was "mere speculation."
16. There is insufficient competent medical evidence of record upon which to find by the greater weight that the incident at work on May 12, 2004 was the cause of the neck condition for which plaintiff underwent surgery.
17. On November 11, 2005, plaintiff was examined by Dr. Moore, who specializes in hand, upper extremity, and microvascular surgery. Plaintiff reported experiencing left ulnar-sided wrist pain. On April 12, 2006, plaintiff underwent a diagnostic arthroscopy which revealed synovitis and a small partial tear of the scapholunate ligament. Plaintiff then underwent a synovectomy to remove the thickening and inflammation of the lining of the joint. *Page 8 
18. On the issue of causation, Dr. Moore testified that although a scapholunate ligament tear can come from a repetitive process, tears are usually caused by an acute injury. After reviewing plaintiff's testimony describing the incident, Dr. Moore opined to a reasonable degree of medical certainty that the mechanics of the incident were consistent with a partial scapholunate ligament tear and that the subsequent synovitis developed as the result of the partial tear. However, Dr. Moore acknowledged that at the initial evaluation, plaintiff reported having experienced left wrist pain for three years, meaning that plaintiff's symptoms pre-dated May 12, 2004. Dr. Moore also clarified that the act of simply lifting a 40-pound sautÉ grate without any rotation of the wrist would be unlikely to cause a scapholunate ligament tear. However, Dr. Moore's opinions concerning causation were based upon his recollection that plaintiff reported to Dr. Moore that he had rotated his wrist while lifting the sautÉ grates.
19. Although based upon Dr. Moore's expert opinion, plaintiff's partial ligament tear was causally related to plaintiff's job duties, there is no medical evidence of record that plaintiff's employment with defendant-employer exposed him to an increased risk of developing a partial scapholunate ligament tear. There also is no medical evidence of record that plaintiff's synovitis was caused by trauma in the employment, in that the medical evidence showed that the abnormality of the ligament tear within the wrist led to the synovitis. Therefore, the Commission finds by the greater weight of the medical evidence that these conditions are not compensable occupational diseases.
20. As to whether plaintiff's partial scapholunate ligament tear and subsequent synovitis were the result of an injury by accident, the lifting of the sautÉ grates was a normal part of plaintiff's job. Additionally, plaintiff did not describe anything unusual or out of the ordinary about lifting the sautÉ grates on May 12, 2004. Therefore, it cannot be found that the *Page 9 
circumstances of plaintiff's injury on May 12, 2004 constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences nor can it be found that his left wrist, hand or arm injuries were the result of an injury by accident.
21. Given the above findings, the Full Commission does not address the issue of plaintiff's possible unjustified refusal of suitable employment.
22. The hearing of this matter was not unreasonably defended and, therefore, no attorney's fees should be assessed.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 12, 2004, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer resulting in injuries to his neck, left wrist, hand or arm. N.C. Gen. Stat. § 97-2(6). See, Holley v. ACTS, Inc., 357 N.C. 228,581 S.E.2d 750 (2003); Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.3d 912 (2000).
2. Because there is no evidence of record that plaintiff's employment with defendant-employer exposed him to an increased risk of developing a partial scapholunate ligament tear which then led to the development of synovitis, plaintiff did not contract compensable occupational diseases. N.C. Gen. Stat. §§ 97-53(13), (20).
3. Because plaintiff's left wrist, arm, hand and neck conditions are not causally related to his employment with defendant-employer, he is not entitled to indemnity or medical compensation. N.C. Gen. Stat. §§97-25, 97-29. *Page 10 
4. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for benefits must be and is HEREBY DENIED.
2. Plaintiff's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is HEREBY DENIED.
3. Each side shall pay its own costs.
This 29th day of May, 2007.
 S/ _____________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/ _____________ DANNY LEE MCDONALD COMMISSIONER
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER *Page 1